UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JANE DOE and JOHN DOE,
husband and wife**,

      Plaintiffs,

vs.

**ETIHAD AIRWAYS, P.J.S.C.**

      Defendant.

Case Number:

Hon.

_____

THE LAW OFFICES OF MARK KELLEY SCHWARTZ, P.C.
By: **MARK KELLEY SCHWARTZ** (P48058)
Attorney for Plaintiffs
29201 Telegraph Rd., Ste. 330
Southfield, MI 48034
Tel: (248) 353-4000
Fax: (248) 353-4005
Email: mks@mkslawfirm.com

_____

**COMPLAINT & DEMAND FOR JURY TRIAL**

NOW COME the Plaintiffs, **JANE DOE and JOHN DOE**, by and through their undersigned legal counsel, **THE LAW OFFICES OF MARK KELLEY SCHWARTZ, P.C,** and complaining of the Defendant, **ETIHAD AIRWAYS, P.J.S.C.**, a foreign corporation, state as follows:

## PARTIES, JURISDICTION & VENUE

1. Plaintiffs JANE DOE and JOHN DOE, wife and husband, were at all times pertinent to this litigation, residents and domiciliaries of the City of Grand Rapids, State of Michigan, and maintained their principal and permanent residence at this location.

2. For the reasons stated in an ex-parte motion for protective order, to be filed following the Complaint, Plaintiffs desire to use a pseudonym in all public records related to this legal proceeding as the instant lawsuit involves matters which are potentially stigmatizing and of a highly personal nature, viz. the possible transmission of the HIV/AIDS virus through needle stick.  Plaintiff Jane Doe's identity is known to Defendant.  Plaintiff John Doe's identity will be revealed to Defendant and this matter will proceed normally, but for the protection against disclosure of Plaintiffs' identities in the public record.

3. Defendant ETIHAD AIRWAYS, P.J.S.C. is a Foreign Air Carrier of the United Arab Emirates, engaged in the scheduled transportation of passengers, property and mail from points behind the United Arab Emirates, via the United Arab Emirates and intermediate points, to a point or points in the United States and beyond, through itself and code share partners.

4. Defendant is the holder of a Foreign Air Carrier Permit issued by the United States Department of Transportation under 49 USC § 41301, through which it operated Etihad Airways Flight EY151 on August 6, 2013.

5. This is an action for the losses and harms arising from personal injuries sustained by the Plaintiff, Jane Doe, as a result of being punctured percutaneously by the needle of a syringe upon reaching into a seatback pocket aboard Defendant's Flight EY151 on August 6, 2013 while traveling from Abu Dhabi, UAE to Chicago O'Hare International Airport, Illinois, United States of America.

6. Subject matter jurisdiction is proper under 28 U.S.C. §1331, in that this action arises from a treaty agreement, namely the Convention for the Unification of Certain Rules Relating to International Carriage by Air, opened for signature on May 18, 1999, reprinted in S. Treaty Doc. 106-45 at 27 (2000) 1999 WL 33292734 (entered into force November 4, 2003) (treaty), commonly referred to as the Montreal Convention.

7. The United States District Court for the Eastern District of Michigan is a proper venue for this action under Article 33 of the Montreal Convention as the State of Michigan was (and continues to be) the principal and permanent place of residency of Plaintiffs and the place from which Defendant operates services for the carriage of persons by air pursuant to commercial agreements with other carriers, from premises leased by those other carriers with which it has commercial agreements.

**GENERAL ALLEGATIONS**

8. On August 6, 2013, the Defendant, Etihad Airways, was a commercial

air carrier certified and operating within the regulations of the United States Department of Transportation, and further in accordance with 14 CFR Part 121; and at all times, engaged in the business of carrying passengers for hire.

9. Prior to August 6, 2013, a contract for international carriage, as that term is known and defined in Article I of the Montreal Convention, was made in the United States providing Plaintiff Jane Doe with international travel by air to Bangalore, India, beginning and ending in the United States.

10. As part of the contract for international carriage on August 6, 2013, Plaintiff boarded an aircraft operated as Etihad Flight EY151 at Abu Dhabi International Airport in the United Arab Emirates with a destination of O'Hare International Airport, Chicago, Illinois, United States of America.

11. On August 6, 2013, shortly after takeoff, Plaintiff Jane Doe's tray table malfunctioned when the knob holding it in the locked position fell onto the floor, causing the tray table to fall open. Plaintiff Jane Doe informed Defendant's flight attendant of the malfunctioning tray table and was told that she (and her daughter) could not be moved to another seat, but would have to leave the tray table extended for the remainder of the approximately fourteen-hour-flight.

12. The tray table remained opened throughout the Jane Doe's flight during which, at some juncture, Jane Doe saw the tray table knob on the cabin floor, and out of kindness, placed it into the seatback pocket of her eleven year-old daughter sitting next to her (Jane Doe's seatback pocket being inaccessible due to

the open tray table).

13. During preparations for landing in Chicago, Jane Doe was advised by a flight attendant that she would have to move to another seat for landing due to her tray table in the open position, and as a courtesy, she reached into her daughter's seatback pocket to retrieve the knob to hand it to the flight attendant.

14. While reaching into her daughter's seatback pocket Jane Doe felt a sharp pain on her finger, as if being punctured by a sharp object. Removing her hand she discovered several drops of blood on her finger, causing her to inspect the seatback pocket, where she discovered a syringe with the hypodermic needle attached.

15. Jane Doe turned the syringe over to Defendant's flight attendant, who was present at the time, and was provided an alcohol swab by the Cabin Manager. Defendant provided no further information to Jane Doe, other than to inform her that they would place this event in their online incident reporting system. No medical attention was offered to her, in flight or upon landing; nor was she advised to seek same.

16. Upon her return home, Jane Doe saw her physician, who placed her on a protocol of powerful drugs used to help combat against the transmission of the Human Immunodeficiency Virus (HIV) / AIDS virus, in addition to testing her for several forms of Hepatitis.

17. As a result of the percutaneous puncture of her finger by the

5

hypodermic needle, Jane Doe did sustain a physical injury coupled with the attendant mental distress, shock, mortification, sickness and illness, outrage and embarrassment from natural sequela of possible exposure to HIV, Hepatitis and other pathogens, in addition to the further losses she has incurred for her health care costs, all in the past and continuing into the future as set forth more completely below.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against the Defendant, ETIHAD AIRWAYS, P.J.S.C., a foreign corporation, in a sum in excess of the minimum jurisdictional limits of this court exclusive of interest, costs and reasonable attorneys' fees.

## CAUSE OF ACTION UNDER ARTICLE 17 OF THE MONTREAL CONVENTION

18. Plaintiffs incorporate by reference the above-stated paragraphs as if fully stated herein.

19. On August 6, 2013, there was in force and effect in the United States a certain multilateral treaty relating to the rules governing international carriage by air known as the Convention for the Unification of Certain Rules Relating to International Carriage by Air, opened for signature on 28 May 1999, reprinted in S. Treaty Doc. 106-45, 1999 WL 33292734 (entered into force November 4, 2003) (treaty), commonly referred to as the Montreal Convention

20. At the time Jane Doe sustained the bodily injuries complained of,

6

Etihad was engaged in international carriage as defined in Article 1 of the Montreal Convention and said Convention is therefore applicable to this action pursuant to Article 1 of that same multilateral treaty.

21.     Pursuant to Article 17 of the Montreal Convention, Defendant is liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage sustained took place on board the aircraft.

22.     The Montreal Convention further provides at Article 21 that for damages up to 100,00 Special Drawing Rights (a unique monetary unit which acts only in the capacity of a reserve instrument, promulgated and controlled by the International Monetary Fund it is composed of a basket of currencies), Etihad shall not be able to exclude or limit its liability, and to the extent that Jane Doe's damages exceed 100,000 Special Drawing Rights, the air carrier must prove that Jane Doe's damages were not due its negligence, wrongful acts or omissions; or, that the Jane Doe's damages were due solely to the negligence, wrongful act or omission of a third party.

23.     On August 6, 2013, while on board the aircraft operated in international carriage by Defendant as Etihad Flight EY151, Jane Doe sustained a percutaneous puncture from the needle of a syringe found in the seatback pocket of her eleven year-old daughter's seat - having gone in there to retrieve Etihad's broken tray table knob.

24. Defendant Etihad Airways' negligence, wrongful act(s) or omission(s) or the negligence, wrongful act(s) or omission(s) of its employees, agents and servants, was a direct and proximate cause of Plaintiff's injuries, which occurred in one, more or all of the following ways:

   a. When Defendant Etihad failed to clean the airplane's seatback pocket in a non-negligent manner (including inspecting for and removing potentially life threatening and bio hazardous objects such as the hypodermic needle);

   b. When Defendant Etihad failed to provide even remedial medical assistance to Jane Doe, either in the air or upon landing, which would have ensured that Jane Doe had undergone immediate post-exposure prophylactic treatment and testing – processes that all medical authorities agree should be commenced within hours of exposure;

   c. When Defendant Etihad failed to utilize, develop and implement a program and provide information regarding bloodborne pathogens and treatment of illness and injuries as required by Federal Aviation Regulations;

   d. When Defendant Etihad failed to train its crewmembers (including cabin cleaners) in effective procedures used to minimize or eliminate exposure to bloodborne pathogens such as occurred to Jane Doe;

   e. When Defendant Etihad failed to investigate this event in any manner to determine the identity of the individual who may have left the exposed hypodermic needle in the seatback pocket; and,

   f. When Etihad failed to test the hypodermic needle and provide the results of any testing performed to Jane Doe or her physicians.

25. The bodily injuries sustained by Jane Doe were not due solely to the

negligence, wrongful act or omission of a third party.

26. Based on the foregoing, Defendant Etihad is liable to Jane Doe without the monetary limitation set forth above and she is entitled to receive full, fair and just compensation for her injuries and damages.

27. That as a result of the bodily injury and actions and omissions of Defendant Etihad, Jane Doe did incur, pain and shock from the puncture wound, emotional distress, embarrassment, mortification, loss of certain pleasures of life, in addition to further sustaining economic damages, including, without limitation, loss of past and future wages, loss of past and future earnings, loss of past and future profits, loss of past and future sales and a loss of earning capacity all as a result of an inability to work and contract, medical, pharmaceutical and rehabilitative expenses; all in the past and continuing through present and into the future.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against the Defendant, ETIHAD AIRWAYS, a foreign corporation, in a sum in excess of the minimum jurisdictional limits of the Court, exclusive of interest, costs and reasonable attorneys' fees.

## LOSS OF CONSORTIUM

28. Plaintiffs incorporate by reference the above-stated paragraphs as if fully stated herein.

29. Plaintiff John Doe is now and was at all times relevant to this

Complaint the lawful husband of Plaintiff Jane Doe.

30. As a direct, proximate and foreseeable result of the above described acts or omissions of the Defendant, Plaintiff John Doe has in the past and will in the future suffer diminishment of his wife's companionship, society, and consortium and has in the past and will in the future incur medical expenses for his care and treatment. These damages were the direct and proximate result of the acts and omissions of Defendant Etihad.

WHEREFORE, Plaintiff John Doe requests this Honorable Court award him his damages that will fully and fairly compensate him the injuries, losses and harms incurred to date as well as the future losses and harms, plus costs, interest, reasonable attorney fees, and all other relief that is fair, just and equitable under the circumstances.

Respectfully submitted,

**MARK KELLEY SCHWARTZ, P.C.**

*/s/ Mark Kelley Schwartz*
By: Mark Kelley Schwartz (P48058)
Attorney for Plaintiffs
29201 Telegraph Road, Ste. 330
Southfield, MI 48034
Telephone: (248) 353-4000
Facsimile: (248) 353-4005
Email: mks@mkslawfirm.com

DATED: October 15, 2013

## **DEMAND FOR JURY TRIAL**

**NOW COME** Plaintiffs, by and through their undersigned legal counsel and hereby make a demand for trial by jury on all issues so triable.

        Respectfully submitted,

        **MARK KELLEY SCHWARTZ, P.C.**

        */s/ Mark Kelley Schwartz*
        By:  Mark Kelley Schwartz (P48058)
        Attorney for Plaintiffs
        29201 Telegraph Road, Ste. 330
        Southfield, MI 48034
        Telephone:  (248) 353-4000
        Facsimile:   (248) 353-4005
        Email: mks@mkslawfirm.com

DATED:  October 15, 2013