# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JANE DOE and JOHN DOE,

husband and wife,


                  Plaintiffs,

                                 Case Number: 13-cv-14358 (JCO) (MKM)

vs.

                                 Hon. John Corbett O'Meara

ETIHAD AIRWAYS, P.J.S.C.

                  Defendant.

| DRIGGERS, SCHULTZ & HERBST P.C. | CLYDE & CO US LLP |
|---|---|
| Mark Kelley Schwartz (P48058) | Andrew J. Harakas (P39829) |
| Attorney for Plaintiffs | Attorney for Defendant |
| 2600 West Big Beaver Road, Suite 550 | Etihad Airways P.J.S.C |
| Troy, MI 48084 | 405 Lexington Avenue, 16th Floor |
| Phone: (248) 649-6000 | New York, New York 10174 |
| Fax: (248) 649-6442 | Phone: (212) 710-3920 |
| Email: MSchwartz@driggersschultz.com | Fax: (212) 710-3950 |
| | Email: andrew.harakas@clydeco.us |
| | |
| | JAFFE RAITT HEUER & WEISS, P.C. |
| | Scott Torpey (P36179) |
| | William D. Adams (P54404) |
| | 27777 Franklin Road, Suite 2500 |
| | Southfield, MI 48034-8214 |
| | Phone: (248) 727-1461 |
| | Fax: (248) 351-3082 |
| | Email: storpey@jafferaitt.com |
| |           wadams@jaffelaw.com |

3114963.1

## MOTION FOR PARTIAL SUMMARY JUDGMENT
## ORAL ARGUMENT REQUESTED

Now comes defendant, Etihad Airways P.J.S.C. ("Etihad") by and through its counsel, Jaffe Raitt Heuer & Weiss, P.C. and Clyde & Co US LLP, and hereby moves this Court for partial summary judgment pursuant to Fed. R. Civ. P. 56(a) dismissing Plaintiffs' claims for fear of contagion and associated damages because such damages are not recoverable under the Montreal Convention or under Michigan law. The facts and law supporting this motion are set forth in the brief accompanying this motion, filed in accordance with E.D. Mich. L.R. 7.1(d).

Under E.D. Mich. L.R. 7.1(a), Etihad states that there was a conference between counsel for the parties on May 22, 2015, during which counsel for Etihad explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought. Accordingly, this motion is opposed.

Date: May 29, 2015

<div style="margin-left:auto; width:50%;">

Respectfully submitted,

JAFFE RAITT HEUER & WEISS, P.C.

By:     /s/Scott R. Torpey (P36179)
           Scott R. Torpey (P36179)
           William D. Adams (P54404)
           Attorneys for Defendant
           27777 Franklin Road, Suite 2500
           Southfield, Michigan 48034
           Phone: (248) 351-3000
           Fax: (248) 351-3082

</div>

JAFFE RAITT HEUER & WEISS, P.C.

3114963.1

-and-

CLYDE & CO US LLP
Andrew J. Harakas (P39829)
Attorney for Defendant
405 Lexington Avenue, 16th Floor
New York, New York 10174
Phone:  (212) 710-3920
Fax:  (212) 710-3950
Email:  andrew.harakas@clydeco.us

JAFFE RAITT HEUER & WEISS, P.C.

2

3114963.1

## STATEMENT OF ISSUES PRESENTED

1.      Whether Defendant Etihad is entitled to partial summary judgment because Plaintiffs cannot establish that Plaintiff Jane Doe's alleged fear of contagion was causally related to a "bodily injury" as required by the Montreal Convention[1]?

Etihad answers:     Yes.

2.      Whether Plaintiff Jane Doe's mental anguish damages for fear of contagion are too speculative to be recoverable under Michigan law where there is no evidence that Plaintiff Jane Doe was exposed to any contagious disease?

Etihad answers:     Yes.

3.      Whether Plaintiff John Doe's claim for loss of consortium must be dismissed to the extent Plaintiff Jane Doe's claim for fear of contagion is dismissed?

Etihad answers:     Yes.

---

[1]      Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on 28 May 1999, ICAO Doc. No. 9740 (entered into force Nov. 4, 2003), *reprinted in* S. Treaty Doc. 106-45, 1999 WL 33292734 ("Montreal Convention").  A copy of the Montreal Convention and current list of State Parties is attached hereto at Exhibit "1."

i

## CONTROLLING/MOST APPROPRIATE AUTHORITY

Pursuant to E.D. Mich. L.R. 7.1(d)(2), Etihad states that the controlling/most appropriate authority for the relief sought is Fed. R. Civ. P. 56; *Creech v. W.A. Foote Mem'l Hosp., Inc.*, 474 Mich. 1135 (2006); *Henry v. Dow Chem. Co.*, 473 Mich. 63 (2005); *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530 (1991); *Ehrlich v. American Airlines, Inc.*, 360 F.3d 366 (2d Cir. 2004); *In re Air Crash at Little Rock Arkansas, on June 1, 1999*, 291 F.3d 503, 510 (8th Cir. 2002); *Longo v. Air France*, 1996 WL 866124 (S.D.N.Y. July 25, 1996); *Rothschild v. Tower Air, Inc.*, 1995 WL 71053 (E.D. Pa. Feb. 22, 1995).

JAFFE RAITT HEUER & WEISS, P.C.

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ...............................................................i

CONTROLLING/MOST APPROPRIATE AUTHORITY ...................................ii

TABLE OF AUTHORITIES ..........................................................................iv

NATURE OF THE ACTION ..........................................................................1

PROCEDURAL BACKGROUND AND THE PARTIES...................................2

RELEVANT FACTS......................................................................................3

ARGUMENT................................................................................................8

   I.  STANDARD FOR SUMMARY JUDGMENT ...........................................8

  II. THE MONTREAL CONVENTION APPLIES TO THIS ACTION AND
      PROVIDES THE EXCLUSIVE CAUSE OF ACTION.............................9

  III. PLAINTIFFS' FEAR OF CONTAGION DAMAGES ARE NOT
       RECOVERABLE UNDER THE MONTREAL CONVENTION
       OR LOCAL LAW ..........................................................................11

     A. Plaintiffs' Fear of Contagion Damages Are Not Recoverable
        Under the Montreal Convention..............................................11

     B. Plaintiffs' Claim for Fear of Contagion is Speculative and is
        Not Recoverable as a Matter of Michigan Law ......................19

     C. Plaintiff John Doe's Derivative Loss of Consortium Claim Must Be
        Dismissed .............................................................................24

   CONCLUSION ........................................................................................24

JAFFE RAITT HEUER & WEISS, P.C.

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aikpitanhi v. Iberia Airlines of Spain,*
  553 F. Supp. 2d 872 (E.D. Mich. 2008) ............................................................. 10

*In ee Air Crash at Little Rock Arkansas, on June 1, 1999,*
  291 F.3d 503 (8th Cir. 2002) .................................................. ii, 12, 15, 16

*Automated Solutions Corp. v. Paragon Data Sys., Inc.,*
  756 F.3d 504 (6th Cir. 2014) ................................................................... 8

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ...................................................................... 8, 9

*Creech v. W.A. Foote Mem'l Hosp., Inc.,*
  2004 WL 1258011 (Mich. Ct. App. June 8, 2004) ................................... 22

*Creech v. W.A. Foote Mem'l Hosp., Inc.,*
  474 Mich. 1135 (2006) .................................................................. ii, 20, 23

*Creech v. W.A. Foote Mem'l Hosp., Inc.,*
  2006 WL 2380825 (Mich. Ct. App. Aug. 17, 2006) ................................ 23

*Eastern Airlines, Inc. v. Floyd,*
  499 U.S. 530 (1991) .................................................................. *passim*

*Ehrlich v. American Airlines, Inc.,*
  360 F.3d 366 (2d Cir. 2004) ........................................... ii, 12, 17, 20

*El Al Israel Airlines, Ltd. v. Tseng,*
  525 U.S. 155 (1999) ....................................................................... 11, 19

*Henry v. Dow Chemical Co.,*
  473 Mich. 63 (2005) .................................................................. *passim*

*Horton v. Potter,*
  369 F.3d 906 (6th Cir. 2004) ................................................................ 8

3114963.1

*Jack v. Trans World Airlines, Inc.*,
    854 F. Supp. 654 (N.D. Cal. 1994)............................................................13, 15

*Kahn v. Burman*,
    673 F. Supp. 210 (E.D. Mich. 1987) ..................................................................24

*Longo v. Air France*,
    1996 WL 866124 (S.D.N.Y July 25, 1996)..................................................*passim*

*Majca v. Beekil*,
    183 Ill.2d 407 (Ill. 1998) ....................................................................................23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .............................................................................................9

*Naqvi v. Turkish Airlines, Inc.*,
    2015 WL 757198 (D. D.C. Feb. 23, 2015)..........................................................12

*Pierce v. Tangipahoa Parish Sch. Bd.*,
    836 So.2d 328 (La. Ct. App. Cir. 2002) .............................................................23

*Rothschild v. Tower Air, Inc.*,
    1995 WL 71053 (E.D. Pa. Feb. 22, 1995)...................................................*passim*

*Zicherman v. Korean Air Lines Co., Ltd.*,
    516 U.S. 217 (1996) .....................................................................................10, 19

**Statutes, Rules and Treaties**

28 U.S.C. § 1441(d) .................................................................................................3

28 U.S.C. § 1602 *et seq.* .........................................................................................2

Fed. R. Civ. P. 56...............................................................................................ii, 24

Fed. R. Civ. P. 56(a) ........................................................................................1, 8, 9

Fed. R. Civ. P. 56(c) ...............................................................................................8

E.D. Mich. L.R. 7.1(a) ............................................................................................1

E.D. Mich. L.R. 7.1(d) ...........................................................................................1

E.D. Mich. L.R. 7.1(d)(2) ......................................................................................ii

JAFFE RAITT HEUER & WEISS, P.C.

3114963.1

Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on 28 May 1999, ICAO Doc. No. 9740 (entered into force November 4, 2003), reprinted in S. Treaty Doc. 106-45, 1999 WL 33292734 ("Montreal Convention") .................................................................................passim

JAFFE RAITT HEUER & WEISS, P.C.

3114963.1

## NATURE OF THE ACTION

This is an action by Plaintiff Jane Doe against Etihad to recover damages for injuries allegedly sustained while a passenger on Etihad flight EY151 from Abu Dhabi, UAE to Chicago on August 6, 2013.  Plaintiff Jane Doe claims that during the flight as she reached into the seatback pocket of an adjacent seat her left hand came into contact with a hypodermic needle.  The crux of Plaintiff Jane Doe's claim is her fear of potentially contracting HIV/Hepatitis following the contact with the hypodermic needle.  Plaintiff John Doe has asserted a derivative claim for loss of consortium.

As EY151 was part of Plaintiff Jane Doe's round-trip transportation – Chicago to Bengaluru, India, via Abu Dhabi – Plaintiffs' claims are exclusively governed by a treaty of the United States known as the Montreal Convention.  In order for Etihad to be liable under the Montreal Convention, Plaintiff must establish that she sustained a "bodily injury" caused by an "accident" on board the aircraft.  *See* Montreal Convention, Article 17.1.  The Convention, however, does not allow recovery of purely mental anguish damages not caused by a "bodily injury."  But even if cognizable under the Convention, damages for fear of contracting HIV/Hepatitis are not recoverable under Michigan law where, as here, there was no evidence that Plaintiff Jane Doe was exposed to the disease or was at risk of contracting HIV/Hepatitis due to the exposure.  Thus, Plaintiffs' damages

are limited to the actual pain and suffering caused by the needle stick and not those associated with the fear of contracting HIV/Hepatitis.

## PROCEDURAL BACKGROUND AND THE PARTIES

Plaintiffs Jane Doe and her husband John Doe, residents of Michigan, commenced this action on October 13, 2013 by filing a Complaint in the United States District Court for the Eastern District of Michigan against Etihad for personal injuries allegedly sustained on August 6, 2013. Docket Entry ("D.E.") 1. Plaintiff Jane Doe asserts a single cause of action under Article 17.1 of the Montreal Convention for bodily injury and seeks to recover damages for pain and shock from the puncture wound, various emotional distress damages related to the fear of contracting HIV or Hepatitis and related medical expenses.[2]   Plaintiff John Doe asserts a cause of action for loss of consortium and related medical expenses.

Etihad is a duly certificated foreign air carrier engaged in the international transportation by air of passengers, and operates flights to and from the U.S., including the incident flight, flight EY151. Etihad is organized and existing under the laws of the UAE and wholly owned by the Government of Abu Dhabi/the UAE.   Accordingly, Etihad is a "foreign state" within the meaning of the Foreign

---

[2]    While Plaintiff Jane Doe alleges economic damages for past and future lost wages/earning capacity and the inability to work, Plaintiff subsequently stated that no such damages are being sought.   *See* Plaintiffs' Response to First Request For Production (Response No. 15), dated May 6, 2014, attached as Exhibit "A" to the Declaration of Andrew J. Harakas, dated May 29, 2015 ("Harakas Decl.").

2

Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* and this case would be tried before the Court without a jury. *See* 28 U.S.C. § 1441(d).

## RELEVANT FACTS

***The Transportation & Incident.*** Plaintiff Jane Doe and her daughter were travelling round-trip from Chicago to Bengaluru, India, with a scheduled stop in Abu Dhabi, United Arab Emirates. *See* Harakas Decl. at Ex. A. The incident alleged in the Complaint occurred on Etihad flight EY151, from Abu Dhabi to Chicago, which was the second sector of Plaintiff Jane Doe's return transportation. *See* D.E. 1, ¶ 5.

Flight EY151 departed Abu Dhabi for Chicago at 9:45 am (Abu Dhabi time) on August 6, 2013 and arrived in Chicago almost 15 hours later at 3:35 pm (Chicago time). *See* Harakas Decl. at Ex. A.

Plaintiff Jane Doe was seated in seat 35B and her 11-year-old daughter was to her left in seat 35A on Etihad flight EY151. Deposition of Plaintiff Jane Doe, dated August 20, 2014, at p. 28, attached as Exhibit "B" to the Harakas Declaration.

After boarding flight EY151 in Abu Dhabi and while seated at seat 35B, the knob which holds the tray table in an upright position on the back of the seat in front of Plaintiff Jane Doe fell to the floor. *See* Harakas Decl., Ex. B, at 29. Plaintiff Jane Doe's daughter picked up the knob from the floor and handed it to

JAFFE RAITT HEUER & WEISS, P.C.

3

Jane Doe who then dropped the knob into the small mesh seatback pocket in front of her daughter's seat. *Id.* at 32. For the duration of the flight, Plaintiff Jane Doe was unable to stow her tray table in the upright position. *Id.* p. 29.

At the top of descent, about 30-45 minutes prior to arrival in Chicago and about 14 hours into the flight, Plaintiff Jane Doe claims that a flight attendant informed her that she and her daughter were required to move to different seats for landing, because they could not allow Plaintiff Jane Doe to remain seated with the tray table down during landing. *Id.* at 31. Plaintiff Jane Doe then reached with her left hand into the small mesh seatback pocket in front of her daughter to retrieve the knob and allegedly felt a pricking sensation on the tip of her left ring finger. *Id.* at 31, 42-43. Plaintiff Jane Doe does not recall what she said but believes she said "ouch" or something to that effect. *Id.* at 53. Plaintiff Jane Doe allegedly was pricked by a hypodermic needle but did not know how far into her finger the hypodermic needle went, and moreover, she did not see the hypodermic needle actually penetrate her skin. *Id.* at 48. She immediately pulled her hand out of the small seatback pocket and placed it on the tray table where she saw drop or two of blood. *Id.* at 48-49.

Etihad Flight Attendant Angelica Jabola was walking through the cabin when she was summoned by Plaintiff Jane Doe who told Jabola that she had been pricked by a hypodermic needle. Deposition of Angelica Jabola, dated October 1,

4

2014, at p. 11, attached as Exhibit "C" to the Harakas Declaration.   Jabola examined Plaintiff Jane Doe's finger closely and did not see any blood.   *Id.* at 12. Specifically, Jabola testified that she held Plaintiff Jane Doe's finger up and squeezed it and that no blood was expelled. *Id.* at 12, 29-30.

Jabola summoned Cabin Senior Frederick John Rint to assist her.   Harakas Decl., Ex. C at p. 16.   Cabin Senior Rint testified that he examined plaintiff Jane Doe's finger and "never saw any wound" and "never saw any blood".   Deposition of Frederick John Rint, dated October 1, 2014, at p. 13, attached as Exhibit "D" to the Harakas Declaration.

Although there was no bleeding, Plaintiff Jane Doe requested a Band-Aid, which Rint retrieved from the amenities pouch as a courtesy.   *Id.* at 25-26.   In fact, when Rint attempted to apply the Band-Aid, he did not know where to place it because he saw no wound.   *Id.*   Thus, he asked Plaintiff Jane Doe to point out where she wanted him to apply it, which he did after sanitizing the area. *Id.* at 26.

While whether the hypodermic needle actually punctured Plaintiff Jane Doe's skin and the presence of blood may be issues of fact, what is not in dispute is that any physical injury or pain she may have suffered by the needle stick was "minimal."  *See* Plaintiffs' Answers to Interrogatories, dated May 6, 2014 at p. 5, attached as Exhibit "E" to the Harakas Declaration; *see also* Harakas Decl. Ex. B at

5

53.  Thus, Plaintiffs' primary claim for damages relates to the fear of contracting HIV/Hepatitis.

The hypodermic needle involved in the incident was disposed of by the ground crew in Chicago.  *See* Harakas Decl., Ex. D, p. 34.  However, both Etihad's expert, Dr. Rodger D. MacArthur, and Plaintiff Jane Doe's primary care physician, Dr. Brian Phillips, agree that the amount of blood in the needle, if any, would have been miniscule, making testing futile.  Deposition of Brian Phillips, MD (with Exhibits), dated October 9, 2014, at p. 13, attached as Exhibit "F" to the Harakas Declaration (it is "doubtful that you would be able to test the contents of the interior of a bore of a needle.").

***Post Incident Medical Evaluation & Treatment.***  While there is no evidence that Plaintiff Jane Doe was exposed to the HIV/Hepatitis virus, upon returning to Michigan, she sought treatment from her primary care physician, Dr. Brian Phillips.  *Id.* at Ex. 1, p. 4.  After Dr. Phillips sought advice from an infectious disease doctor in his practice group, he prescribed antiviral antibiotics.  *Id.* at p. 28 and Ex. 1, p. 5.  Plaintiff Jane Doe also was tested for HIV and Hepatitis B and C during that visit and the results were negative.  *Id.* at Ex. 1, p. 12.

Plaintiff Jane Doe returned for a follow-up appointment on September 12, 2013 at which time Dr. Phillips indicated that she was "feeling completely well".  *Id.* at 18.  Doctor Phillips recommended that Plaintiff Jane Doe return for testing

JAFFE RAITT HEUER & WEISS, P.C.

6

both at the three- and six-month marks. *Id.*   Nevertheless, Plaintiff Jane Doe did not return for additional testing until April 1, 2014, nearly eight months post-incident. *Id.* at p. 24.   She again tested negative for HIV/Hepatitis. *Id.*   Plaintiff Jane Doe tested a final time on August 19, 2014 and the results were again negative.   *See* Spectrum Health records, dated August 19, 2014, attached as Exhibit "G" to the Harakas Declaration.

Etihad's expert, Dr. Rodger D. MacArthur, has opined that, based upon the facts and circumstances surrounding the needle stick incident, there was zero risk to Plaintiff Jane Doe of becoming infected with HIV or Hepatitis.   A copy of Dr. MacArthur's report is attached at Exhibit "H" to the Declaration of Andrew J. Harakas, at EY0254.[3]   Specifically, Plaintiffs allege that the hypodermic needle was on the aircraft because of the failure of the Etihad cleaners to properly clean the aircraft *prior to Plaintiff Jane Doe even boarding*. *See* D.E. 1, ¶ 24.[4]   The hypodermic needle would have been non-infectious given the amount of time it

_____

[3]   Dr. MacArthur has offered the only expert medical opinion on the issue of exposure and causation with respect to the possibility of Plaintiff Jane Doe contracting HIV/Hepatitis.   Dr. MacArthur's opinions are not contradicted as Plaintiffs have not offered the opinions of any experts, but rather have offered only the medical records of Plaintiff Jane Doe's treating physicians, who do not specialize and are not experts in transmission of infectious diseases.   In that regard, Plaintiffs have not identified any expert qualified to refute Dr. MacArthur's opinions, and will not be able to do so at trial.

[4]   For purposes of this motion only, Etihad does not dispute that the hypodermic needle was in the seatback pocket at the time Plaintiff Jane Doe boarded the aircraft in Abu Dhabi.

JAFFE RAITT HEUER & WEISS, P.C.

was outside the body of the user—the incident having occurred at the end of the 14-hour flight. Harakas Decl. Ex. H, at EY0254. Therefore, Plaintiff Jane Doe's fear of contagion was unfounded.

## ARGUMENT

## I

## STANDARD FOR SUMMARY JUDGMENT

Fed. R. Civ. P. 56(c) authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). The moving party satisfies this burden by "'showing' – that is, by pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004)(*quoting, Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324; *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson*, 477 U.S. at

JAFFE RAITT HEUER & WEISS, P.C.

8

248.   The non-moving party then "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   Rather, the party opposing summary judgment must make a sufficient showing on each essential element of the case for which he had the burden of proof. *Celotex*, 477 U.S. at 322-23. "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

Here, there is no genuine dispute as to any material fact and, therefore, Etihad is entitled to partial summary judgment as a matter of law under Fed. R. Civ. P. 56(a) dismissing Plaintiffs' claims for damages relating to Plaintiff Jane Doe's fear of contagion.

## II

## THE MONTREAL CONVENTION APPLIES TO THIS ACTION AND PROVIDES THE EXCLUSIVE CAUSE OF ACTION

It is undisputed that this action exclusively is governed by the Montreal Convention, which applies to "all international carriage of persons, baggage, or cargo performed by aircraft for reward." Montreal Convention, Article 1.1. Article 1.2 of the Convention defines "international carriage" as:

9

. . . any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage. . . are situated. . . within the territories of two State Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party. . .

Plaintiffs admit in the Complaint that Plaintiff Jane Doe's contract of carriage on Etihad provided for "international carriage" by air between U.S. (Chicago) and India via Abu Dhabi (UAE) – all State Parties to the Montreal Convention. *See* D.E. 1, ¶ 9.

Where, as here, the Montreal Convention applies, the Convention preempts state-law claims and is the exclusive remedy available to Plaintiffs. *See* Montreal Convention, Article 29; *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 161 (1999) ("recovery for a personal injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking or disembarking,' ... , if not allowed under the Convention, is not available at all.").[5]   However, even if a claim is cognizable under the Convention, the types of damages recoverable are governed by local law. *Zicherman v. Korean Air Lines Co., Ltd.*, 516 U.S. 217, 229 (1996).

---

[5]   While *Tseng* addressed the Warsaw Convention (1929), the predecessor treaty to the Montreal Convention, the courts properly look to Warsaw Convention case law as persuasive precedent for interpreting the Montreal Convention. *See Aikpitanhi v. Iberia Airlines of Spain*, 553 F. Supp. 2d 872, 875 (E.D. Mich. 2008).

JAFFE RAITT HEUER & WEISS, P.C.

<div style="text-align:center">

**III**

**PLAINTIFFS' FEAR OF CONTAGION DAMAGES ARE NOT RECOVERABLE UNDER THE MONTREAL CONVENTION OR LOCAL LAW**

</div>

Plaintiffs' claims should be dismissed to the extent they are seeking damages for Plaintiff Jane Doe's fear of contagion and associated damages. Plaintiffs' claims for fear of contagion damages are not recoverable under either the Montreal Convention or under Michigan law and must be dismissed.

**A.   Plaintiff's Fear of Contagion Damages Are Not Recoverable Under the Montreal Convention**

Article 17.1 of the Montreal Convention creates a presumption of air carrier liability for "bodily injury", as follows:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

A passenger seeking to hold a carrier liable for injury has the burden of establishing each of the Article 17.1 requirements (*i.e.*, an "accident," that caused "bodily injury," that occurred on board or during the process of embarking or disembarking the aircraft). *See Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 535-36 (1991). Only after a plaintiff has satisfied these conditions is the carrier liable, subject to the Article 20 exoneration defense, for provable damages up to 113,100 SDRs.

11

Here, partial summary judgment is proper because Plaintiffs cannot establish one of the primary conditions for the Article 17.1 liability – "damage sustained in case of …bodily injury."

It is well-settled that in order to recover for any injuries arising out of an accident under the Convention, a plaintiff must sustain physical injuries. *See Floyd*, 499 U.S. at 552.   Thus, damages for purely mental anguish are not recoverable under the Convention because they are not *caused by* a bodily injury.

While *Floyd* did not take a position as to whether "the recoverable damages—including emotional distress—are those caused by the bodily injury or by the accident itself," the mainstream approach has been to allow mental anguish damages *only if such damages are caused by a "bodily injury"*.   *See, e.g., Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 401 (2d Cir. 2004); *In re Air Crash at Little Rock Arkansas, on June 1, 1999*, 291 F.3d 503, 510 (8th Cir. 2002), *cert. den'd by Lloyd v. American Airlines, Inc.*, 537 U.S. 974 (2002) (mental injuries must flow from physical injuries); *Naqvi v. Turkish Airlines, Inc.*, 2015 WL 757198 (D. D.C. Feb. 23, 2015) (to prevail, a plaintiff's mental injury must proximately flow from physical injuries); *Longo v. Air France*, 1996 WL 866124, at *2 (S.D.N.Y July 25, 1996) (mental distress that does not flow from a physical injury "are no different from the pure mental injury claims proscribed by *Floyd*"); *Rothschild v. Tower Air, Inc.*, 1995 WL 71053, at *2 (E.D. Pa. Feb. 22, 1995)

JAFFE RAITT HEUER & WEISS, P.C.

12

(mental anguish must flow from bodily injury and fear of AIDS/contagion too speculative to be recoverable absent actual exposure); *Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654 (N.D. Cal. 1994) (emotional distress must causally flow from bodily injury).

To the extent Plaintiffs are seeking to recover for the fear of contagion from the alleged Article 17 "accident", the claim must be dismissed because there is no evidence that Plaintiff Jane Doe was exposed to HIV/Hepatitis and Plaintiffs' fear is not caused by the bodily injury itself but caused by the nature of the object (a hypodermic needle).

For example, in *Rothschild*, 1995 WL 71053 at *2,  which is factually identical to this case and the only Warsaw Convention case to address the recoverability under the Convention of damages for fear of contracting AIDS, the court denied recovery.   In *Rothschild*, the plaintiff alleged that during an international flight she reached into the magazine pouch adjacent to her seat and was stabbed in her finger by a hypodermic needle that was in the pouch. *Id.* at *1. The court granted a motion *in limine* which precluded the plaintiffs from introducing evidence at trial concerning the plaintiff's fear of contracting AIDS and/or hepatitis from the needle. *Id.*  Following trial, the plaintiffs filed a motion for a new trial arguing that the court erred limiting the evidence because the plaintiff suffered a physical injury, the needle prick, and that they were entitled "to

13

recover for *any and all* emotional distress that occurred, regardless of whether the distress is in any way related to the bodily injury." *Id.* at 1 (emphasis in original). The court denied the motion and rejected the plaintiffs' argument finding that:

> While there are not any cases involving a claim for fear of contracting AIDS under the Warsaw Convention, there are various cases interpreting such claims under state law. [footnote omitted] These cases hold that a plaintiff must first show exposure to the disease in order to recover for the fear of contracting the disease. The rationale behind these decisions is that the plaintiffs' injuries could not result from the disease unless the plaintiffs were exposed to the disease.  To allow recovery without any proof of exposure would be purely speculative.

> In the instant case, Mrs. Rothschild was permitted to testify about, and recover for, her pain and suffering flowing from the needle prick, such as any pain and suffering she experienced from the various tests that were performed on her.  However, she was not permitted to testify about her fear of contracting AIDS and/or hepatitis because she did not show any exposure to these diseases, and permitting recovery under these circumstances would be purely speculative.  Moreover, if this Court was to accept Plaintiffs' argument, a passenger pricked by a needle could bring a cause of action for fear of contracting any and every communicable disease without having a reasonable basis to believe that he/she was exposed to the various diseases.

*Id.* at *2.[6]

Similarly, here, Plaintiff Jane Doe alleges that she was stuck by a hypodermic needle as she reached into an adjacent seatback pocket and suffered emotional distress relating to the fear of exposure even though there is no evidence of actual exposure beyond mere speculation.  Just as the Court found in *Rothschild,*

---

[6]    As discussed *infra* at 20, this is the same approach adopted by the Michigan courts.

JAFFE RAITT HEUER & WEISS, P.C.

this Court should reject Plaintiffs' argument that they should "recover for *any and all* emotional distress that occurred, regardless of whether the distress is in any way related to the bodily injury" as contrary to the Convention and, as discussed in greater detail below (*infra* at p. 20), as too speculative to be recoverable.

The holding in *Rothschild* is consistent with other Convention cases which do not permit recovery for the distress about the accident itself but only for mental anguish damages *caused by the bodily injury*.

The *Jack* court addressed claims arising out of an aborted takeoff, crash and fire on a flight departing John F. Kennedy Airport in New York and bound for San Francisco. 854 F. Supp. at 657. Most of the passengers suffered minor physical injuries and, many were traumatized by the accident. *Id.* The *Jack* plaintiffs sought to recover mental anguish damages. *Id.*

The *Jack* court analyzed the various possible approaches under which mental anguish damages could be recoverable and found that the only approach consistent with the Convention and *Floyd*, *permits* damages for mental anguish *only to the extent such damages are caused by the bodily injury*. *Id.* at 665-668. In so finding, the court held that "[r]ecovery is not allowed for the distress about the accident itself." *Id.* at 668.

The court in *In re Little Rock,* 291 F.3d at 510, adopted a similar approach. *In re Little Rock* involved a plaintiff who survived an air crash that killed the pilot

and ten passengers and suffered a punctured and scraped leg from the bolts of her seat, tendonitis from other seats falling on her knee, and smoke inhalation from the crash. *Id.* at 506-507. The plaintiff also alleged mental injuries, which included anxiety and nerves upon returning to school, flashbacks, panic attacks and PTSD. *Id.* at 507. The district court allowed the plaintiff's recovery for mental injuries finding that the "knee and calf injuries, the smoke inhalation, were all part of a terrifying accident, which led to [plaintiff's] PTSD." *Id.* at 511. The Eighth Circuit reversed stating that "allowing a physical injury, no matter how minor or unrelated, to trigger recovery of any and all post-crash mental injuries would violate both the letter and spirit of *Floyd.*" *Id.* at 510. Accordingly, the Court concluded that "under the *Floyd* interpretation of the Warsaw Convention, [it] must draw a line between mental injuries flowing from physical injuries suffered in the crash and mental injuries directly caused by the accident." *Id.* at 511. The court found that although the injuries to the plaintiff's legs could have caused some of her mental injuries, the bulk of her mental injuries were caused by the accident, not the physical injuries themselves, and, hence, were not recoverable. *Id.*

In *Longo*, plaintiffs evacuated after the aircraft on which they were traveling slid off the runway after landing. 1996 WL 866124, at *1. During the landing, the plaintiffs suffered bodily injuries—bruises to their thighs and knees—and mental injuries, *i.e.* the apprehension of death and the fear of flying. *Id.* Air France

argued that mental distress damages are recoverable only to the extent they relate to the bodily injuries. *Id.* Because the plaintiffs alleged that their fear of death flowed from the accident itself, not the bruises they sustained therein, the court dismissed their mental anguish claims to the extent that they did not flow from their physical injuries. *Id.* at 2.

Finally, in *Ehrlich*, the plaintiffs alleged physical and mental injuries following an abnormal landing in which the aircraft overshot the runway and would have plunged into the waters of the adjacent bay had it not been abruptly stopped by an arrestor bed. 360 F.3d at 368. Both plaintiffs contended that they suffered bodily injuries during the course of both the abnormal landing and the evacuation of the aircraft. In addition, they both contended that they sustained mental injuries, including the fear of flying, nightmares relating to the abnormal landing/evacuation and difficulty sleeping. *Id.* at 368.

In affirming the District Court's decision after an exhaustive examination of the drafting history of the Warsaw and Montreal Conventions and U.S. and foreign case law, the Court held "that a carrier may be held liable under Article 17 for mental injuries only if they are caused by bodily injuries." *Id.* at 400.

In order for Plaintiffs' claims to survive, the Court would have to adopt one of the overly broad approaches explicitly rejected by the above courts. Here, Plaintiff Jane Doe allegedly was stuck with a hypodermic needle in her finger. It is

JAFFE RAITT HEUER & WEISS, P.C.

17

this needle stick that would be the Article 17 "bodily injury" caused by an accident. However, Plaintiff Jane Doe's alleged damages for fear of contagion were not caused by the very minor and brief pain associated with the needlestick—the bodily injury—but, rather, from her unfounded fear of exposure to a contagious disease.

While this distinction may appear to be subtle, it also is critical and precludes Plaintiffs from recovering fear of contagion damages as a matter of law. To allow for recovery under these facts would mean that the Court would have to adopt the very approach that was explicitly rejected by almost all courts.

Even assuming, *arguendo*, Plaintiff Jane Doe suffered a bodily injury from the alleged needlestick, which Etihad does for the purposes of this motion only, Plaintiffs cannot establish that Plaintiff Jane Doe's fear of contagion damages flowed from that bodily injury, and, thus, Plaintiffs are not entitled to recover fear of contagion damages.

**B.    Plaintiffs' Claim for Fear of Contagion Is Speculative and is Not Recoverable as a Matter of Michigan Law**

Even if the Court were to hold that Plaintiff Jane Doe's claim for fear of contagion is not barred by the Montreal Convention, such damages are barred by Michigan law.

As noted, Article 17 of the Montreal Convention sets forth conditions under which an air carrier can be held liable for injuries to passengers, *i.e.*, damage sustained in the event of a bodily injury.   *Floyd*, 499 U.S. at 532-33; *Tseng*, 525 U.S. at 162.   The United States Supreme Court in *Zicherman v. Korean Air Lines Co., Ltd.*, 516 U.S. 217 (1996), however, held that "in an action brought under Article 17, the law of the Convention does not affect the substantive questions of who may bring suit and what they may be compensated for.   Those questions are to be answered by the domestic law selected by the courts of the contracting states." *Id.* at 225.   As the Court explained, Article 17 "provide[s] nothing more than a pass-through, authorizing us to apply the law that would govern in the absence of the Warsaw Convention." *Id.* at 229.

Thus, even if Plaintiff Jane Doe's fear of contagion claim was the type of injury cognizable under Article 17.1 of the Montreal Convention, the question then

19

arises whether such damages are compensable under the applicable domestic law – here, Michigan state law.[7]

The Michigan Supreme Court held in the context of toxic exposure that damages similar to those sought by Plaintiffs are too speculative to be recoverable. *See Creech v. W.A. Foote Mem. Hosp.*, 474 Mich. 1135 (2006); *Henry v. Dow Chemical Co.*, 473 Mich. 63 (2005).

The standard for recovery of future contingent damages was set by the Michigan Supreme Court in *Henry v. Dow Chem. Co.*, 473 Mich. 63 (2005).   The *Henry* case involved a putative class of 173 plaintiffs who alleged that defendant Dow negligently released dioxin, a synthetic chemical that was *potentially* hazardous to human health, from its plant in Midland, Michigan, into the Tittabawassee flood plan, where the putative class members lived and worked. *Id.* at 67.

The *Henry* court recognized that the class members were not pursuing a classic toxic tort claim, but rather, the claims were "premised on a novel legal theory in Michigan tort law and thus raises an issue of first impression for this Court." *Id.* at 67.   Rather than asserting that the chemicals allegedly released by defendant Dow actually caused the manifestation of disease or physical injury, the

---

[7]     The Courts in *Ehrlich* and *Longo* did not reach whether the mental anguish damages claimed in those cases were recoverable under the applicable state law because each court held that the mental anguish claims were precluded by the language of Article 17. *Ehrlich*, 360 F.3d at 401; *Longo*, 1996 WL 86614, at *2.

plaintiffs instead alleged that Dow's release of dioxin "created the *risk* of disease-that they *may* at some indefinite time in the future develop disease or physical injury..." *Id.* (emphasis in original).

The Court held that the plaintiffs failed to state a claim on which relief can be granted because they could not establish any present physical injuries, but rather sought compensation for injuries that they *may suffer* in the future.   Faced with this novel theory of liability, the Court reaffirmed "the principle that a plaintiff must demonstrate a present physical injury to person or property in addition to economic losses that result from that injury in order to recover under a negligence theory." *Id.* at 75-76.   While it never had to articulate the present physical injury requirement, the Court noted that it is a long-standing requirement in Michigan tort law and that "[h]ad we been presented in 1869 with an action against a blacksmith by local residents alleging that the blacksmith's emissions caused them the fear of physical injury someday, we have little doubt that this Court would have expressly articulated the injury requirement at that time." *Id.*

The Court further held that the plaintiffs' fear, however reasonable, was insufficient to state a claim for damages under Michigan law.   *Id.* at 79.   The Court rejected the dissent's argument that the injured plaintiffs will be left without a remedy, noting that "a party who actually contracts a dioxin-related disease will not be foreclosed from recovery..." *Id.* at 98.

21

In *Creech v. W.A. Foote Mem. Hosp.*, 2004 WL 1258011 (Mich. Ct. App. June 8, 2004), *vacated*, 713 N.W.2d 257, *remanded to*, 2006 WL 2380825 (Mich. Ct. App. Aug. 17, 2006), the plaintiffs sued for fear of potentially contracting HIV/Hepatitis as a result of possible exposure to an infectious disease by the defendant hospital due to the fact that endoscopes used to perform the plaintiffs' endoscopies had not been properly disinfected.  Despite receiving confirmation from the Centers for Disease Control and the Food and Drug Administration that the possibility of exposure to communicable diseases such as Hepatitis or HIV and resultant cross-infection was "very, very unlikely", the defendant hospital mailed the letters to the patients who underwent endoscopies within the questioned timeframe, informing them of the possibility, however slight, that they had been exposed to a communicable disease. *Id.* at 1.  In a split decision, the Court of Appeals held that because the parties had not completed discovery, summary judgment was not appropriate. *Id.* at 12.  Court of Appeals Judge Murray opined in his partial concurrence/dissent that the trial court should have granted the defendant's motion as the law does not allow for recovery for such speculative damages. *Id.* at 13.  The defendants sought leave to appeal to the Michigan Supreme Court and the case was held in abeyance until *Henry* was decided.

In light of the *Henry* court's clear pronouncement of Michigan law, the Michigan Supreme Court remanded the case to the Court of Appeals for a

determination as to the validity of the plaintiffs' claims for fear of potentially contracting HIV/Hepatitis as a result of possible exposure to infectious disease. *Creech v. W.A. Foote Mem'l Hosp.*, 474 Mich. 1135 (2006).   Michigan Supreme Court Justice Corrigan, who concurred with the remand, specifically noted that, "[p]laintiffs do not allege that they actually contracted an infection from exposure to the endoscopes. Thus, plaintiffs' tort claims are based on a fear of possible future injury and are precluded as a matter of law." *Creech*, 474 Mich. at 1137.

On remand, the Court of Appeals held  that   "[t]o the extent that the complaints seek damages based upon the anticipation of a future injury or medical monitoring of that anticipated future injury, or based only upon some future physical injury such as a latent disease or the fear of such a disease, they do not survive *Henry*." *Creech v. W.A. Foote Mem'l Hosp., Inc.*, 2006 WL 2380825 at *2 (Mich.   Ct. App. Aug. 17, 2006).   The holding is consistent with Michigan Supreme Court Justice Corrigan's concurrence. *See Creech*, 474 Mich. at 1137.

Courts in other jurisdictions similarly have held that in the context of exposure to contagious diseases,  actual exposure is required because absent proof of actual exposure to HIV, a claim for fear of contracting AIDS is too speculative to be legally cognizable. In other words, "[i]t is unreasonable for a person to fear infection when that person has not been exposed to a disease." *Majca v. Beekil*, 183

JAFFE RAITT HEUER & WEISS, P.C.

23

Ill.2d 407, 421 (Ill. 1998); *accord Pierce v. Tangipahoa Parish Sch. Bd.*, 836 So.2d

328, 332 (La. Ct. App. 2002); *Rothschild*, 1995 WL 71053 at *2.

In this case, there is no evidence of exposure to any infectious disease and it

is undisputed that Plaintiff Jane Doe did not contract HIV or Hepatitis as a result of

the needlestick on the aircraft.  Therefore, Plaintiffs' claim for fear of contagion is

too speculative to be recoverable under the state law of Michigan, and Etihad is

entitled to partial summary judgment under Fed. R. Civ. P. 56.

**C.   Plaintiff John Doe's Derivative Loss of Consortium Claim Must Be Dismissed**

Plaintiff John Doe's claims for loss of consortium are derivative to his wife's

claims for fear of contagion.  The viability of this claim is dependent upon the

viability of the primary claim by Plaintiff Jane Doe.  Thus, to the extent the Court

grants Etihad's motion, the claim of Plaintiff John Doe also must be dismissed.

*See, e.g., Kahn v. Burman*, 673 F. Supp. 210, 217 (E.D. Mich. 1987),*aff'd*, 8768

F.2d 1436 (6th Cir. 1989).

## CONCLUSION

In light of the foregoing, Etihad requests that this Court grant its motion for

partial summary judgment under Fed. R. Civ. P. 56 and dismiss Plaintiffs' claims

for fear of contagion damages and the related derivative loss of consortium claim.

JAFFE RAITT HEUER & WEISS, P.C.

Date:  May 29, 2015

Respectfully submitted,

JAFFE RAITT HEUER & WEISS, P.C.

By:      /s/Scott R. Torpey (P36179)
         Scott R. Torpey (P36179)
         William D. Adams (P54404)
         Attorneys for Etihad Airways P.J.S.C.
         27777 Franklin Road, Suite 2500
         Southfield, Michigan 48034
         Phone: (248) 351-3000
         Fax: (248) 351-3082

         -and-

         CLYDE & CO US LLP
         Andrew J. Harakas (P39829)
         Attorney for Etihad Airways P.J.S.C.
         405 Lexington Avenue, 16th Floor
         New York, New York 10174
         Phone:  (212) 710-3920
         Fax:  (212) 710-3950

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2015 I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

/s/Deborah Gutierrez

25